## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PATRICK PLUMLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No._____ |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR VIOLATIONS OF** |
| VEONEER, INC., ROBERT W. ALSPAUGH, | ) | **THE FEDERAL SECURITIES LAWS** |
| JAN CARLSON, JAMES M. RINGLER, | ) | |
| MARK DURCAN, JONAS SYNNERGREN, | ) | |
| MARY LOUISE CUMMINGS, KAZUHIKO | ) | **JURY TRIAL DEMANDED** |
| SAKAMOTO, and WOLFGANG ZIEBART, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

Plaintiff Patrick Plumley ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

### NATURE OF THE ACTION

1.      Plaintiff brings this action against Veoneer, Inc. ("Veoneer" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which Magna International Inc. ("Magna") will acquire the Company through Magna's subsidiary 2486345 Delaware Corporation ("Acquisition Sub (the "Proposed Transaction").[1]

2.      On July 23, 2021, Veoneer and Magna jointly announced their entry into an

---

[1] Non-party Magna is a global automotive supplier headquartered in Aurora, Ontario, Canada.  Magna touts itself as having  complete vehicle engineering and contract manufacturing expertise, as well as product capabilities which include body, chassis, exterior, seating, powertrain, active driver assistance, electronics, mechatronics, mirrors, lighting and roof systems.   Non-party Acquisition Sub is a Delaware corporation and an indirect, wholly owned subsidiary of Magna.

Agreement and Plan of Merger dated the previous day (the "Merger Agreement").  That agreement provides Veoneer stockholders will receive $31.25 in cash for each Veoneer common share held. (the "Merger Consideration").[2]

3.      On September 9, 2021, Veoneer filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Veoneer stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this

---

[2] The approximate value of the Proposed Transaction is $3.8 billion.

Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and is and has been at all times relevant hereto, a continuous stockholder of Veoneer.

10.     Defendant Veoneer is a Delaware corporation with its principal executive offices located at Klarabergsviadukten 70, Section C6, Box 13089, SE-103 02, Stockholm, Sweden.  The Company is a worldwide leader in automotive technology, having become an independent company in June 2018 as a result of the separation of its Electronics segment from Autoliv, Inc. ("Autoliv") (the "Spin-Off").  Veoneer's common stock trades on The New York Stock Exchange under the ticker symbol "VNE."

11.     Robert W. Alspaugh ("Alspaugh") is and has been a director of the Company since June 29, 2018.

12.     Defendant Jan Carlson ("Carlson") has been Chairman of the Board since its June 29, 2018, and President, Chief Executive Officer ("CEO"), and a director of the Company since April 1, 2018.  Prior to the Spin-off, defendant Carlson served as the President and CEO of Autoliv since April 1, 2007.

13.     Defendant James M. Ringler ("Ringler") is and has been a director of the Company since April 1, 2018.

14.     Defendant Mark Durcan ("Durcan") is and has been a director of the Company since June 29, 2018.

15.     Defendant Jonas Synnergren ("Synnergren") is and has been a director of the Company since June 29, 2018.

16.    Defendant Mary Louise Cummings ("Cummings") is and has been a director of the Company since June 29, 2018.

17.    Defendant Kazuhiko Sakamoto ("Sakamoto") is and has been a director of the Company since June 29, 2018.

18.    Defendant Wolfgang Ziebart ("Ziebart") is and has been a director of the Company since June 29, 2018.

19.    Defendants identified in paragraphs 11-18 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

20.    On July 22, 2021, Veoneer and Magna announced in relevant part:

AURORA, Ontario, Canada July 22, 2021 and STOCKHOLM, Sweden July 23, 2021 – Magna International Inc. (TSX: MG; NYSE: MGA) and Veoneer, Inc. (NYSE: VNE and SSE: VNE SDB) today announced that they have entered into a definitive merger agreement under which Magna will acquire Veoneer, a leader in automotive safety technology.   Pursuant to the agreement, Magna will acquire all of the issued and outstanding shares of Veoneer for $ 31.25  per share in cash, representing a total value of $3.8 billion, and an enterprise value of $3.3 billion, inclusive of Veoneer's cash, net of debt and other debt-like items as of March 31, 2021.

The acquisition builds on Magna's strengths and positions the company's advanced driver assistance systems ("ADAS") business as a global leader with comprehensive capabilities.   The acquisition also expands Magna's ADAS business with major customers and provides access to new customers and regions, including in Asia. Magna expects to operate Veoneer's ArriverTM sensor perception and drive policy software platform as an independent business unit, consistent with Veoneer's current practice.  In addition, Magna will acquire Veoneer's leading global position in restraint control systems.

"Veoneer's complementary technology offerings, customer base, and geographic footprint make it an excellent fit with our ADAS business, and the acquisition strengthens our global engineering and software development talent base," said Magna CEO Swamy Kotagiri.   "We expect the combined entity to be an industry leader in active safety solutions, to enhance its position in complete ADAS systems, and to be well-positioned for the transition towards higher levels of autonomy.  The acquisition is also consistent with our go-forward strategy to accelerate investment in high-growth areas."

Following the closing of the transaction, Veoneer will be combined with Magna's existing ADAS business and integrated into Magna's electronics operating unit. The combined business will build upon relationships with both organizations' automotive customers, suppliers and technology partners to develop best-in-class products.

Jan Carlson, Veoneer's Chairman, President and CEO said: "This is a compelling transaction for all our stakeholders. It will deliver significant and immediate value to Veoneer stockholders through an attractive premium to our trading price, and provide new opportunities for our employees to join one of the most capable suppliers in the mobility space. In addition, combining forces with Magna will allow the combined business to elevate its status as a full-systems ADAS supplier, which should benefit our customers, supplier partners and ultimately consumers."

Mr. Kotagiri added, "We have a great deal of respect for Veoneer's team around the world and their culture of innovation and creativity. We look forward to welcoming Veoneer's employees into our global Magna family and are confident that together we will be able to achieve great results and move faster to address the growing ADAS market."

**HIGHLIGHTS OF THE TRANSACTION**

- Creates a global leader in ADAS with pro forma 2020 ADAS sales of $1.2 billion and capabilities across:

  o Key component categories, including camera, radar, LiDAR and domain controllers; and

  o Software features/functions, including perception and drive policy.

- Enhances Magna's ADAS systems capabilities and adds significant engineering and software competency, including ArriverTM sensor perception and drive policy software.

- The complementary nature of the two businesses is expected to result in greater ADAS content per vehicle for Magna driven by the opportunity to offer more complete and integrated ADAS systems, inclusive of software.

- Strengthens Magna's customer and geographic diversification in ADAS. The combined entity will have a well-diversified customer base. In addition, Veoneer's business and footprint in Asia builds on Magna's customer and geographic bases in this important region.

- Expect to realize annual run-rate synergies of approximately $100 million by 2024. These savings are incremental to Veoneer's previously announced market adjustment initiatives.

- The all-cash transaction will allow Magna to maintain a strong balance sheet with an expected adjusted debt to adjusted EBITDA ratio slightly above the high end of Magna's 1.0 to 1.5 target range at closing.

**TRANSACTION DETAILS AND TIMING**

The transaction has been unanimously approved by the Veoneer and Magna boards of directors, and Veoneer's board of directors unanimously recommends that Veoneer stockholders approve the proposed merger and merger agreement. In addition, Veoneer stockholders AMF, Cevian, AP4 and Alecta, which collectively represent approximately 40% of Veoneer's outstanding shares of common stock, have either entered into support agreements with Magna or provided indications of support, pursuant to which they have agreed, among other things and subject to certain conditions, to vote their shares of Veoneer common stock in favor of the transaction. A special meeting of Veoneer's stockholders will be convened in connection with the transaction as soon as practicable after the mailing to Veoneer's stockholders of the proxy statement in connection with the merger. The transaction is expected to close near the end of 2021, subject to the approval of Veoneer's stockholders, certain regulatory approvals and other customary closing conditions. The transaction is not subject to any financing conditions.

Citi serves as financial advisor and Sidley Austin LLP serves as legal counsel to Magna. Rothschild & Co and Morgan Stanley serve as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP serves as legal counsel to Veoneer.

**The Proxy Statement Contains Material Misstatements or Omissions**

21.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Veoneer' stockholders. The Proxy Statement misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

22.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the Company's financial projections; (b) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors: Morgan Stanley & Co LLC ("Morgan Stanley") and Rothschild & Co US Inc. ("Rothschild"); and (c) certain potential conflicts affecting Morgan Stanley.

***Material Omissions Concerning the Company's Financial Projections***

23.     The Proxy Statement omits material information regarding the Company's financial projections, including the line items underlying: (a) Gross Profit; (b) Operating Income; (c) EBITDA;

and (d) Unlevered Free Cash Flow.

24.     The omission of this information renders the statements in the "Projections Provided by Veoneer's Management" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning the Financial Analyses Relied on by the Board**

25.     The Proxy Statement omits material information regarding the data and inputs underlying the valuation analyses performed by the Company's financial advisors, Morgan Stanley and Rothschild (collectively, the "Financial Advisors").

26.     The Proxy Statement describes the Financial Advisors' respective fairness opinions and the various underlying valuation analyses.  That description, however, omits key inputs and assumptions forming the bases of these analyses.  The absence of this material information precludes the Company's public stockholders from fully understanding the Financial Advisors' work.  As a result, Veoneer stockholders cannot assess what significance to place on the Financial Advisors' respective fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

27.     With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to disclose the individual multiples and/or metrics for each "comparable company."

28.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the line items used to calculate the Company's unlevered free cash flow; (b) the terminal values for Veoneer; (c) the inputs and assumptions underlying the discount rates used in the analysis; (d) ) the inputs and assumptions underlying the perpetuity growth rates used in the analysis; (e) the Company's net debt; and (f) the number of fully diluted shares of Company stock.

29.     With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets*

analyses, the Proxy Statement fails to disclose: (a) the price targets observed in the analyses; and (b) the sources thereof.

30.     With respect to Rothschild's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the line items used to calculate the Company's unlevered free cash flow; (b) the terminal values for Veoneer; (c) the inputs and assumptions underlying the discount rates used in the analysis; (d) ) the inputs and assumptions underlying the perpetuity growth rates used in the analysis; (e) the Company's net debt; and (f) the number of fully diluted shares of Company stock.

31.     The Proxy Statement also fails to disclose: (a) the premia observed for each transaction considered in Rothschilds' *Selected Precedent Transactions Analysis*, and (b) the sources thereof, as well as the "equity analyst per share target prices" considered by Rothschild in advising the Board.

32.     The omission of this information renders the statements in the "Opinions of Veoneer's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

33.     The Proxy Statement omits material information concerning potential conflicts of interest involving Morgan Stanley, including the  timing and nature of the past services Morgan Stanley and/or its affiliates provided Magna and/or its affiliates, including the amount of compensation Morgan Stanley received or expects to receive for providing each service.

34.     The Proxy Statement also fails to disclose the timing and nature of the past services Morgan Stanley and/or its affiliates provided Veoneer and/or its affiliates.

35.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions.  Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

*Material Omissions Concerning the Potential Conflicts Affecting Morgan Stanley*

36.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.   Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Veoneer stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

37.     Plaintiff repeats all previous allegations as if set forth in full.

38.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

39.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.   The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Financial Advisors.   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

40.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

41.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

42.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

<u>**COUNT II**</u>

**Claims Against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

43.     Plaintiff repeats all previous allegations as if set forth in full.

44.     The Individual Defendants acted as controlling persons of Veoneer within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Veoneer, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

47.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Veoneer' stockholders will be irreparably harmed.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Veoneer, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Veoneer stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

      C.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

      D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  September 16, 2021        **LONG LAW, LLC**

By  */s/ Brian D. Long*
      Brian D. Long (#4347)
      3828 Kennett Pike, Suite 208
      Wilmington, DE 19807
      Telephone: (302) 729-9100
      Email: BDLong@longlawde.com

      *Attorneys for Plaintiff*